EMMA ACKERSON, Appellant, v. J. N. FLY, Admr., Respondent.

St. Louis Court of Appeals, February 17, 1903.

1.  Contract to Will Property: CONSIDERATION: SPECIFIC PERFORMANCE: EQUITY: PRACTICE, TRIAL.  To authorize a court of equity to specifically enforce an oral promise to make a devise to a particular person, the promise must be founded on a valuable consideration, and it should appear that a fraud would be perpetrated on the promisee unless the contract was specifically enforced.

2.  ———: ———: ———:'———.   In the case at bar, the consideration of the contract was that plaintiff should become a member of defendant's family, and keep house for him, which she never performed.   *Held*, specific performance of the contract will not be decreed.

Appeal from Lawrence Circuit Court. — *Hon. Henry C. Pepper,* Judge.

AFFIRMED.

## STATEMENT.

Emma Ackerson, the plaintiff, is a girl fourteen years of age and sued by her next friend. Peter Ackerson was her grandfather. He died intestate in the year 1900. Defendant Fly is the administrator of the estate.

The substantive averments of the petition are as follows:

"Plaintiff further states that on the ——— day of ———, 1900, said Peter Ackerson, deceased, was old and infirm and had been for a long time prior thereto; that he was a single man, and had no one to care for him and to assist him in looking after his business affairs, and had no one to keep house for him, his wife having been dead for years, and all of his children having married and moved to themselves; that on the last date above mentioned plaintiff and deceased entered into a contract or agreement wherein it was contracted and agreed by and between deceased and plaintiff that if plaintiff would assist deceased in looking after and managing his business affairs, and keep house for him and render him all of the assistance she could as long as he should live, that he would at the time of his death for and in consideration of said services to be rendered as aforesaid, give to plaintiff all of his property of whatsoever kind, character or description of which he should die seized and possessed.

"Plaintiff further states that, for and in consideration of said contract or agreement, she immediately entered upon the discharge of her duties under said contract or agreement, and was carrying out the provisions of said contract on her part when said Peter

Ackerson died on the —— of ————, 1900.

"Plaintiff further states that the said Peter Ackerson died intestate, and seized and possessed of a large amount of personal property, amounting to about two thousand dollars," etc.

A description of the personal estate of deceased follows and a prayer that the administrator be required to turn it over to plaintiff.

The answer put in issue these allegations.

The issues were submitted to the court, who, after hearing the evidence, rendered a judgment for defendant from which plaintiff duly appealed to this court.

The evidence is that Peter Ackerson was old and infirm and had for several years lived with and at the home of some of his married children; that a few weeks prior to his death he took a notion to set up housekeeping for himself and promised plaintiff that if she would stay with him and keep house for him while he lived she should have · all the property he should die possessed of; that plaintiff accepted this offer and both parties proceeded to make preparations to set up housekeeping in a house, presumably belonging to Peter Ackerson.

Mr. Ackerson took the windowblinds off the windows and sowed some grass seed in the yard, bought and set up a cooking stove and moved some of his furniture into the house. Plaintiff washed the windows, scrubbed some of the floors in the house and put up fruit, at the home where she was living, for the use of herself and grandfather in cans furnished by him. The old man bought a cow, a buggy and a horse and made plaintiff a present of them—the administrator got possession of the horse, but not of the cow and buggy. Two days prior to the day he had set for moving into the house and taking up his abode with plaintiff, Peter Ackerson suddenly and unexpectedly died. Plaintiff at no time changed her residence to

Ackerson v. Fly.

the house of Peter Ackerson nor did she move any of her personal effects thereto.

*Cloud & Davis* for plaintiff.

Plaintiff having, at the time of her grandfather's death, discharged all of the duties imposed on her under said agreement, a court of equity will decree specific performance thereof. Wright v. Tinsly, 30 Mo. 389; Gupton v. Gupton, 47 Mo. 37; Sharkey McDermot, 91 Mo. 647; Sultor v. Hayden, 62 Mo. 101; Clark v. Cordry, 69 Mo. App. 6.

*Edw. J. White* for respondent.

(1) The enforcement of an executory contract is not a matter of absolute right, but rests in the sound discretion of the court, to be granted or denied, as the varying circumstances of each particular case may demand and such contract will never be enforced when the decree would produce injustice or would be inequitable, considering all the circumstances of the case. Hollman v. Conlan, 143 Mo. 369; Davis v. Petty, 147 Mo. 374; Pomeroy v. Fullerton, 131 Mo. 581. (2) The doctrine that specific performance is a matter of discretion and not of absolute right, applies particularly to a unilateral contract, where one party "is bound by a cable" and the other "by not as much as a silken thread." Hollman v. Conlan, supra; Mastin v. Halley, 61 Mo. 200. (3) Specific performance will never be decreed, unless there be entire mutuality, "both as to the obligation and the remedy." Glass v. Rowe, 103 Mo. 514; Mastin v. Halley, 61 Mo. 201; Davis v. Petty, 147 Mo. 374.

BLAND, P. J.—Plaintiff asked for the specific performance of a contract, which she on her part has never performed and which it is impossible for her to perform. The consideration moving Peter Ackerson

to enter into the contract with plaintiff was that plaintiff should become a  member of his  family, that he could have the pleasure and comfort of her society as such and that she should keep house for him.  She never became a member of his family, he did not have the enjoyment of her society, she never kept house for him a day or an hour.

To authorize a court of equity to specifically enforce an oral promise to make a devise to a particular person, the promise must be founded on a valuable consideration and it should appear that a fraud would be perpetrated on the promisee unless the contract was specifically enforced.  Kinney v. Murray, 71 S. W. (Mo.) 197.

The plaintiff performed a few hours, or, at most, a few days labor for her grandfather.  She received from him a cow and a buggy, property greatly exceeding in value the value of the  services she  rendered him.

There is no inherent equity in the case and the judgment is affirmed.  *Reyburn* and *Goode, JJ.,* concur.